**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FRANK CARTER** | **CIVIL ACTION** |
| **VERSUS** | |
| **CRANE CHEMPHARMA & ENERGY CORP.** | **NO. 25-01128-BAJ-RLB** |

**RULING AND ORDER**

Before the Court is Defendant Crane ChemPharma & Energy Corp.'s ("Crane") **Motion to Dismiss (Doc. 4)**. Plaintiff Frank Carter opposes the Motion. (Doc. 6). Defendant filed a Reply Brief. (Doc. 7). For the reasons stated herein, Defendant's Motion is **GRANTED**.

## I. BACKGROUND

This is a case of alleged unfair trade practices. Plaintiff alleges the following facts, which are taken as true for the purpose of this Motion to Dismiss.

Plaintiff Frank Carter is a sales representative employed by Corr Tech, Inc. ("Corr Tech"). (Doc. 1-1 ¶ 2). Corr Tech manufactures "corrosion resistant and high porosity piping valvues [sic], tanks, pumps, and custom fabrications for sale to commercial businesses." (*Id.* ¶ 3).

For many years in his role as a Corr Tech sales representative, Plaintiff has sold products to Westlake Corporation ("Westlake"), a Corr Tech customer. (*Id.* ¶ 6). Over the past 19 years, Plaintiff's sales to Westlake, and the resulting commissions Plaintiff received as a result of those sales, have been significant. (*Id.* ¶ 19).

In 2023, a catastrophic failure of a certain pipe manufactured by Corr Tech allegedly occurred at Westlake. (*Id.* ¶ 7). Corr Tech's business competitor, Defendant Crane, allegedly analyzed portions of the failed carbon steel. (*Id.* ¶ 8). Crane allegedly concluded that the damage at issue occurred during Corr Tech's manufacturing process. (*Id.*).

In or about November 2023, Crane instigated a meeting of Westlake engineers. (*Id.* ¶ 9). During this meeting, Crane employees informed Westlake employees that Corr Tech caused the alleged damage to the Westlake piping. (*Id.*). As a result, Plaintiff's sales of Corr Tech products to Westlake sites fell dramatically in 2024 and 2025. (*Id.* ¶ 10). The decreased sales resulted in a significant loss of income to Plaintiff. (*Id.*).

Plaintiff alleges that despite assertions to the contrary, Crane did not actually send the piping at issue for evaluation. (*Id.* ¶ 11). Although it is Westlake's policy to prepare a "Fabricator non-compliance report" when a failure occurs, "Plaintiff has not seen any such reports and has significant doubt that those reports even exist for any incidents in question." (*Id.* ¶ 13).

Plaintiff therefore contends that Crane employees engaged in a systematic course of action to interfere with Plaintiff and Westlake's business relationship. (*Id.* ¶ 14). Plaintiff alleges that Crane's systematic operation was instituted with actual malice towards Plaintiff and Corr Tech to interfere with Plaintiff's business relationship with Westlake. (*Id.* ¶ 16).

## II. PROCEDURAL HISTORY

On or about December 9, 2025, Plaintiff filed this lawsuit in state court.[1] (Doc. 1-1). On December 19, 2025, Defendant removed the case to this Court. (Doc. 1). Defendant asserts diversity jurisdiction under 28 U.S.C. § 1332. (*Id.* ¶ 18).

Plaintiff asserts the following causes of action against Defendant: (1) tortious interference; and (2) violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), Louisiana Revised Statutes § 51:401, *et seq.* (Doc. 1-1).

Now, Defendant moves to dismiss each of Plaintiff's claims against it. (Doc. 4). For the following reasons, Defendant's Motion will be **GRANTED.**

## III. LEGAL STANDARD

Defendant moves to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### A. Rule 12(b)(1).

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Products Liab. Litig*, 668 F.3d 281, 286 (5th Cir. 2012). Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court should consider a Rule 12(b)(1) attack before addressing any

[1] Because Plaintiff's case originated in state court, the initial pleading is styled as a "Petition." However, the Court will refer to it as a "Complaint" throughout this Ruling and Order. (Doc. 1-1).

challenge on the merits of the claims. *Id.*

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). That standard seeks to determine whether "a complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (holding that a court

ruling on a Rule 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts").

**B. Rule 12(b)(6).**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft,* 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable

to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

## IV. DISCUSSION

Defendant moves to dismiss each of Plaintiff's claims. (Doc. 4). First, Defendant argues that Plaintiff lacks standing to assert claims based on alleged injuries to his employer, Corr Tech. (*Id.* at 1). Second, Defendant argues that Plaintiff's claims are prescribed. (*Id.*). Third, Defendant contends that even if Plaintiff's claims were timely, the alleged conduct at issue does not state a claim under LUTPA or for tortious interference. (*Id.*). Finally, Defendant argues that amendment would be futile because the defects in the Complaint are legal and incurable. (*Id.*). For the following reasons, Defendant's Motion will be **GRANTED**.

### A. Whether Plaintiff Has Standing.

First, Defendant argues that Plaintiff does not have standing to assert injuries suffered by his employer, Corr Tech, which is not a party to this case. (Doc. 4-1 at 5–6). Defendant contends that Plaintiff's standing is limited to injuries personal to him, rather than injuries that are derivative of Corr Tech's alleged harm. (*Id.* at 6). Defendant argues that a salesman does not acquire standing to assert his employer's claims merely because his compensation is commission-based. (Doc. 7 at 2).

Plaintiff disagrees, asserting that he has standing as a Corr Tech sales representative. (Doc. 6 at 4). Plaintiff contends that he is directly affected by Corr Tech's decrease in sales from Westlake because he is paid on both a salary and

commission basis. (*Id.*). Because he has lost financial gain due to Crane's actions, Plaintiff contends that his standing is "without question." (*Id.*).

The United States Court of Appeals for the Fifth Circuit has emphasized, "Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Little*, 575 F.3d at 540 (citing *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009); *Lujan*, 504 U.S. at 560–61).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Little*, 575 F.3d at 540 (citing *Lujan*, 504 U.S. at 561). At the pleading stage, allegations of injury are liberally construed. *Little*, 575 F.3d at 540 (citing *Lujan*, 504 U.S. at 561) ("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim' [of standing].") (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990)).

However, allegations of injury that are merely conjectural or hypothetical do not suffice to confer standing. *Little*, 575 F.3d at 540 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344–46, 350 (2006)). A claim of injury generally is too conjectural or hypothetical to confer standing when the injury's existence depends on the decisions of third parties not before the court. *Little*, 575 F.3d at 540 (citing *Simon v.*

*E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976) ("[I]njury at the hands of a hospital is insufficient by itself to establish a case or controversy in the context of this suit, for no hospital is a defendant.")).

Here, Plaintiff alleges that in or about November 2023, Crane instigated a meeting of Westlake engineers, during which Crane employees informed Westlake employees that Corr Tech was the cause of the alleged damage to the Westlake piping. (Doc. 1-1 ¶ 9). As a result, Plaintiff's sales of Corr Tech products to Westlake sites fell dramatically in 2024 and 2025, and Plaintiff lost significant corresponding commissions. (*Id.* ¶¶ 10, 19). Based on these allegations, Plaintiff argues that he has standing because:

> It [i]s not just his employer [that] is suffering—he is suffering a loss of income due to his particular role within the company as a salaried and commission-based employee. This is concrete, particularized, actual, and imminent, as he has lost sales (income) and continues to lose sales (income) from the action taken by Crane. This injury is traceable to the challenged action, and it would be redressable by a favorable ruling. Finally, [Plaintiff] Carter certainly has a personal stake in the outcome of the controversy. He has lost financial gain due to the actions by Crane.

(Doc. 6 at 4).

Based on Plaintiff's Complaint, it appears that Plaintiff has likely failed to bear his burden to establish standing because the existence of his alleged injury depends on the decisions of third parties not before the Court, such as his employer, Corr Tech, and his employer's customer, Westlake. *Little*, 575 F.3d at 540 ("A claim of injury generally is too conjectural or hypothetical to confer standing when the injury's existence depends on the decisions of third parties not before the court."); *id.* at 540–41 ("The competitors' claim of injury depends on several layers of decisions by third

parties—at minimum, [defendant's] clients—and is too speculative to confer Article III standing.") (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976) ("[I]njury at the hands of a hospital is insufficient by itself to establish a case or controversy in the context of this suit, for no hospital is a defendant.")); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors"). The Court need not conclusively decide the issue, however, because even assuming *arguendo* that Plaintiff has standing to pursue his claims, his claims are prescribed and must be dismissed as untimely, as described below.

**B. Whether Plaintiff's Claims are Prescribed.**

Second, Defendant argues that Plaintiff's LUTPA and tortious interference claims are prescribed. Defendant points to Plaintiff's Complaint, which alleges no acts or omissions by Crane or its employees after November 2023. (Doc. 4-1 at 7). Plaintiff alleges that in or about November 2023, Crane instigated a meeting of Westlake engineers, during which Crane employees informed Westlake employees that Corr Tech was the cause of the damage to the Westlake piping. (Doc. 1-1 ¶ 9). Because Plaintiff did not file suit until December 9, 2025, Defendant argues that Plaintiff's claims are prescribed under the one-year prescriptive periods applicable to Plaintiff's claims.

Plaintiff seeks to avoid prescription by invoking *contra non valentem* and the continuing tort doctrine. (Doc. 6 at 5). Plaintiff argues that the date of the November 2023 meeting is not when Plaintiff's injury was suffered, but rather:

> The evidence will establish that sales in 2022 between Westlake and CorrTech were $2.3 million.
>
> At the end of 2023, the sales had dropped to $481,000.
>
> By the end of 2024, sales were down to $351,000.
>
> And by the end of 2025, sales were down to a mere $110,000.

(*Id.* at 5–6). These new facts are not alleged in Plaintiff's Complaint.

Defendant responds that if Corr Tech's sales to Westlake dropped from $2.3 million in 2022 to $481,000 by the end of 2023, then Plaintiff's commissions necessarily decreased in 2023. (Doc. 7 at 3). Defendant contends that Plaintiff plainly was—or should have been—aware of the alleged injury by year-end 2023. (*Id.* at 3). But Plaintiff did not file suit until December of 2025, two years later, and thus, his claims are prescribed. (*Id.*; Doc. 1-1). The Court agrees with Defendant.

**i. Applicable Prescriptive Periods.**

Both of Plaintiff's claims are subject to a one-year prescriptive period. Plaintiff's LUTPA claim is subject to a one-year prescriptive period, running from the time of the transaction or act which gave rise to this right of action. La. Rev. Stat. § 51:1409(E); *see also Hunters Run Gun Club, LLC v. Baker*, No. CV 17-176-SDD-EWD, 2019 WL 3240044, at *4 (M.D. La. July 18, 2019) ("According to La. R.S. § 51:1409(E), there is a one year prescriptive period on LUPTA claims."). Plaintiff's tortious interference claim is similarly subject to a prescriptive period of one year, "commenc[ing] to run from the day injury or damage is sustained."

La. Civ. Code art. 3492.[2] Thus, Plaintiff must have filed within one year of the act or injury that gave rise to his claims. Plaintiff, however, asks the Court to invoke the doctrine of *contra non valentem* or the continuing tort doctrine to find that his claims are timely. (Doc. 6 at 5).

**ii. *Contra Non Valentem.***

Under Louisiana law, *contra non valentem* is a doctrine that tolls the statute of limitations and is thus "an exception to the general rules of prescription."[3] *Ellis v. Evonik Corp.*, 604 F. Supp. 3d 356, 363 (E.D. La. 2022) (citing *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994)). This doctrine suspends the prescriptive period under certain circumstances, including situations in which the cause of action is not known

[2] The Louisiana prescriptive period applicable to Plaintiff's tort claims is one year. La. Civ. Code art. 3492 (repealed by Acts 2024, No. 423, § 2, eff. July 1, 2024). Currently, Louisiana's prescriptive period applicable to tort claims is two years. La. Civ. Code art. 3493.1. However, Article 3493.1 has "prospective application only," and its two-year prescriptive period "shall apply to delictual actions arising after the [July 1, 2024] effective date of [Act 423]." TORT ACTIONS, 2024 La. Sess. Law Serv. Act 423 (H.B. 315). Because the alleged facts underlying Plaintiff's claims occurred before July 1, 2024, the former Article 3492 and its one-year prescriptive period apply. *See Allied World Nat'l Assurance Co. v. Nisus Corp.*, 134 F.4th 821, 826 n.3 (5th Cir. 2025) (applying the former Article 3492's one-year prescriptive period to tort claim arising from facts occurring before July 1, 2024).

[3] The doctrine tolls prescription only in these four "exceptional circumstances":

> (1) where there was some legal cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; (2) where there was some condition or matter coupled with the contract or connected with the proceedings which prevented the plaintiff from availing himself of his cause of action; (3) where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 390 (5th Cir. 2021) (citing *Morgan v. Entergy New Orleans, Inc.*, 234 So. 3d 113, 116, 120 (La. Ct. App. 2017)).

or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. *Ellis*, 604 F. Supp. 3d at 363 (citing *Renfroe v. State ex rel. Dept. of Transp. & Dev.*, 809 So. 2d 947, 953 (La. 2002)).

But this exception, sometimes known as the "discovery rule," is available only in "exceptional circumstances." *Ellis*, 604 F. Supp. 3d at 364 (citing *Meggs v. Davis Mortuary Serv., Inc.*, 301 So. 3d 1208, 1213 (La. App. 5 Cir. 2020)) (quoting *Renfroe*, 809 So. 2d at 953). The law is clear that the prescriptive period begins to run once a party has "constructive knowledge . . . of the facts that would entitle him to bring a suit," even if he does not have actual knowledge of those facts. *Ellis*, 604 F. Supp. 3d at 364 (citing *Campo v. Correa*, 828 So. 2d 502, 510 (La. 2002)).

"Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *Ellis*, 604 F. Supp. 3d at 364 (citing *Campo*, 828 So. 2d at 510–11). "Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead," and therefore "is sufficient to start running of prescription." *Ellis*, 604 F. Supp. 3d at 364 (citing *Campo*, 828 So. 2d at 511; *Meggs*, 301 So. 3d at 1213 ("If the plaintiff could have discovered the cause of action by exercising reasonable diligence, the doctrine will not prevent the running of prescription.") (additional citations omitted); *Miles v. MEMC Pasadena, Inc.*, No. 08-4436, 2009 WL 1323014, at *3 (E.D. La. May 8, 2009) ("The plaintiff must show that the cause of action for his injuries was not reasonably knowable. This is a heavy burden.")).

"[W]hen the cause of action is prescribed on the face of the pleadings, the

burden shifts to the plaintiff to show that the action has not been prescribed. *Big River Indus., Inc. v. Headwaters Res., Inc.*, 971 F. Supp. 2d 609, 624 (M.D. La. 2013) (citing *Campo,* 828 So.2d at 508). To satisfy this burden, "the plaintiff[] must initially allege facts with particularity which indicate that the injury and its causal relationship to the alleged misconduct were not apparent or discoverable until within the year before the suit was filed." *Big River Indus., Inc*, 971 F. Supp. 2d at 624 (citing *Campo,* 828 So.2d at 509, n. 9).

Here, Plaintiff's claims are prescribed on the face of the Complaint because the acts at issue allegedly occurred in November 2023, over two years before he filed suit. Because his claims are prescribed on the face of the Complaint, Plaintiff bears the burden to show that his claims are not prescribed. Plaintiff fails to do so.

In opposition to Defendant's Motion to Dismiss, Plaintiff provides sales numbers indicating that Corr Tech's sales to Westlake dropped from $2.3 million in 2022 to $481,000 by the end of 2023. (Doc. 7 at 3). Although these allegations are not contained in the Complaint, even if the Court were to grant Plaintiff leave to amend the Complaint, by his own argument, Plaintiff was, or should have been, aware of the alleged injury by year-end 2023. Plaintiff, however, did not file suit until December of 2025, two years later. (Doc. 1-1). As a result, Plaintiffs' claims are prescribed and must be **DISMISSED WITH PREJUDICE**.

**iii. Continuing Tort.**

Under Louisiana law, "[w]hen tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages

is abated." *Williams v. Otis Elevator Co.*, 557 F. App'x 299, 301 (5th Cir. 2014) (citing *First Nat'l Bank v. Smith,* 29–350, p. 4 (La.App. 2 Cir. 4/2/97); 691 So.2d 355, 358)). For the continuous tort doctrine to apply, "the operating cause of the injury [must] be a continuous one which results in continuous damages." *Williams*, 557 F. App'x at 301 (citing *Crump v. Sabine River Auth.,* 98–2326, p. 7 (La.6/29/99); 737 So.2d 720, 726). It does not apply if "the complained of actions by the defendant were simply the continued ill effects that arose from a single tortious act." *Williams*, 557 F. App'x at 301–02 (internal citations omitted).

Here, Plaintiff alleges a one-time wrong: Crane's alleged misrepresentations at the November 2023 meeting with Westlake. Although Plaintiff argues a continuation of ill effects following the November 2023 meeting, namely, a decrease in Plaintiff's commissions in the years following the November 2023 meeting, Plaintiff does not allege continuous wrongful action on the part of Defendant. Thus, the continuing tort doctrine is inapplicable here, and Plaintiff's claims are prescribed.[4]

---

[4] Because the Court has dismissed Plaintiff's claims as untimely, it need not address Defendant's remaining arguments. However, without deciding the issues, the merits of Plaintiff's claims also appear tenuous.

Plaintiff appears to have waived his tortious interference with a contract claim by failing to oppose Defendant's Motion to Dismiss with respect to this claim. (Doc. 6).

With respect to his tortious interference with a business relationship claim, "[o]ver the last two decades, courts in Louisiana, including the Fifth Circuit, have repeatedly observed that this [tortious interference with a business relationship] standard is so difficult that 'there appear to be no reported cases in which anyone actually has been held liable for the tort.'" *B & S Equip. Co. v. Cent. States Underwater Contracting, Inc.*, No. CV 19-14769, 2020 WL 1953614, at *4 (E.D. La. Apr. 23, 2020) (citing *Whitney Bank v. SMI Cos. Global, Inc.*, 949 F.3d 196, 208 (5th Cir. 2020) (additional citations omitted)).

### C. Whether Plaintiff Should be Granted Leave to Amend.

In the alternative, Plaintiff requests leave to amend the Complaint. (Doc. 25 at 12). Although leave to amend should be freely given, the Court need not grant leave to amend if an amendment would be futile. *Matter of: Sherwin Alumina Co., L.L.C.*, 952 F.3d 229, 236 (5th Cir. 2020) ("[W]here amendment would be futile, the court need not grant the plaintiff leave to amend.").

Here, because Plaintiff's claims are prescribed, amendment would be futile. Accordingly, the Court **DENIES** Plaintiff leave to amend with respect to these claims.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Crane ChemPharma & Energy Corp.'s **Motion to Dismiss (Doc. 4)** is **GRANTED**.

---

Courts have determined that "the range of prohibited practices under LUTPA is extremely narrow." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1060. "Therefore, only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." *Id.* In establishing a LUTPA claim, "the plaintiff must show the alleged conduct offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* at 1059 (citation modified). "LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." *Id.* at 1060 (citing *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993)).

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

Baton Rouge, Louisiana, this 25th day of September, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**